IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LINDQUIST FORD, INC.,
STEVEN LINDQUIST, and
CRAIG MILLER,

                              Plaintiffs,

         v.

MIDDLETON MOTORS, INC.,

                              Defendant.

OPINION AND ORDER

07-cv-12-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiffs Lindquist Ford, Inc., Steven Lindquist and Craig Miller sued defendant Middleton Motors, Inc. for damages arising out of an unsuccessful attempt by the parties to join forces. Over a period of months, the parties discussed the possibility that plaintiff Lindquist Ford would make an investment in defendant's business and provide managerial help, but they never reached agreement on the terms of such an arrangement. In April 2003, in the beginning days of the negotiations, they agreed that plaintiff Craig Miller would begin working as interim manager of defendant's dealership, subject to a formal agreement to be negotiated in the future. Months of negotiations came to naught; plaintiffs never made the investment defendant wanted; and in March 2004, defendant terminated Miller and ended

1

its talks with plaintiffs.

In 2007, plaintiffs brought suit against defendant for breach of contract, quantum meruit, unjust enrichment and promissory estoppel. In an order entered on November 7, 2007, I granted defendant's motion for summary judgment on plaintiffs' claims of breach of contract and promissory estoppel, finding that the parties never reached agreement on the terms of the contract and that defendant never agreed to pay for plaintiffs' management help in the absence of a cash investment in the business. I denied the motion as it related to plaintiffs' claims of quantum meruit on the ground that at trial, a factfinder could find that defendant had requested plaintiffs to perform services; plaintiffs had complied with the request; and the services were valuable to defendant. I denied the claim for unjust enrichment on the ground that a factfinder could find at trial that plaintiffs conferred a benefit upon defendant; defendant knew about or appreciated the benefit; and defendant accepted or retained the benefit under circumstances making it inequitable for defendant to retain the benefit without payment of its value.

The parties chose to try the remaining claims to the court. At the conclusion of the trial, plaintiffs were awarded $160,000 for Miller's work and defendant was ordered to pay prejudgment interest of 5% on the award to plaintiffs, with interest running from March 22, 2004 through entry of judgment. Shortly thereafter, defendant wrote to the court, seeking reconsideration of the award of interest on the ground that Wisconsin law does not permit

2

an award of prejudgment interest on damages that are not liquidated or reasonably ascertainable.  The parties briefed this issue and a second one, whether defendant was entitled to a credit against the $160,000 award for an advance payment of $7,668 from defendant to plaintiffs in December 2003.  Along with their response to defendant's two motions, plaintiffs submitted a new motion in which they argued that Wis. Stat. § 807.01 entitled them to double costs and 12% interest on the damages award, running from October 19, 2007, when plaintiffs made defendant an offer of settlement in the amount of $125,000, to the day on which the judgment is paid.  Defendant has advised the court that it does not dispute plaintiffs' entitlement to costs and interest under this statute.

On January 9, 2008, defendant filed a notice of appeal from the judgment on the merits.

OPINION

A minor point of procedure should be addressed at the outset.  Fed. R. App. P. 4(a)(4) provides that if a party files one of several specified motions, including Rule 52(b) motions to amend or alter the judgment or make additional factual findings, the time for appeal will be stayed until the last remaining motion has been resolved.  Defendant did not identify its letters to the court as motions; however, fairly characterized, the motions are brought pursuant to Rule 52(b) because defendant seeks to amend the judgment.  Such a motion can

3

be addressed by the district court even after a notice of appeal has been filed.

A. Plaintiff's Entitlement to Quantum Meruit or Unjust Enrichment Damages

Before addressing defendant's challenge to the award of damages, I will take up defendant's contention in its brief in support of its letter-motions that it was error for the court to find that plaintiffs were entitled to $160,000 for Craig Miller's work as defendant's manager for eleven months under the theory of quantum meruit of unjust enrichment. They believe that the court merged the theories of quantum meruit and unjust enrichment and failed to apply either theory correctly.

Under Wisconsin law, "recovery in quantum meruit is based upon an implied contract to pay reasonable compensation for services rendered." Ramsey v. Ellis, 168 Wis. 2d 779, 785, 484 N.W.2d 331, 333 (1992). Damages are "measured by the reasonable value of the plaintiff's services." Id., 484 N.W.2d at 334. In the December 6 order denying defendant's motion for summary judgment in part, I found that plaintiffs had established a prima facie case supporting their claim for quantum meruit damages, creating a rebuttable presumption that "the parties mutually intended fair payment." Theuerkauf v. Sutton, 102 Wis. 2d 176, 185, 297 N.W.2d 514, 658 (1981). This left the possibility that at trial, defendant could avoid liability for such damages by coming forward "with evidence sufficient to rebut and overcome the presumption of the existence of an implied contract in fact." Id. at 186, 297

4

N.W.2d at 658.  The ultimate question would be whether "the parties, by their words, their conduct, or course of dealing, came to a mutual agreement . . . this determination in turn depends upon an objective assessment of the parties' external expressions of intention as distinguished from their undisclosed intentions."  Id. (citing Restatement (Second) of Contracts, § 2 Cmt. b and § 228 (Drafts No. 1, 1964, and No. 5, 1970, approved 1979)).

Defendant asserts now that it did not have a fair opportunity to adduce evidence at trial to rebut the presumption that it ever agreed to pay plaintiffs for Miller's services, although it does not cite any evidence it would have introduced on this point or show why it would have been relevant.  The undisputed facts showed that plaintiffs requested services from plaintiffs; plaintiffs provided the services in the form of Miller's time and managerial efforts; and the services were valuable to defendant.  Defendant seems to be standing on the arguments it made at summary judgment, that the parties understood that Miller's compensation was limited to a percentage of the profits he was able to generate for the dealership and that Miller's services lacked any value to defendant because he failed to make the dealership profitable.

The agreement to compensate plaintiffs by a share of the profits was an element of the aborted contract negotiations; the fact that the parties never reached agreement on a formal contract does not mean that they can continue to rely on the form of compensation they would have agreed to under the contract.  Once negotiations ceased, there was no

5

further agreement for compensation in the form of a share of the profits.  Thus, evidence that the parties sought to reach an agreement for profit-based compensation does not serve to rebut the presumption that the parties "mutually intended fair payment" when no formal agreement was reached.

As to the actual value of Miller's services, defendant put in extensive evidence intended to show that his services did not add value to the dealership.  That I found the evidence less persuasive than plaintiffs' does not mean that defendant was precluded from introducing it.  Thus I found that the parties had come to a mutual agreement that Miller would act as general manager of defendant and would be paid the reasonable value of his services.  Looking at what was customary in the community for managers of similar dealerships, I found that plaintiffs' services were worth $160,000.  I was persuaded that if defendant had gone into the market place to hire a general manager, it would have had to pay at least that much, particularly given the dealership's precarious financial situation.  Offering a share of anticipated profits would have had no attraction, when it was evident that just keeping the business afloat and reducing its losses would be a major achievement.

In the alternative, I concluded that defendant would be unjustly enriched if it had the benefit of Miller's services for eleven months without paying plaintiffs the reasonable value of those services.  The elements of an unjust enrichment claim are "(1) plaintiff conferred benefit on defendant, (2) defendant knew of the benefit, and (3) it is inequitable for

6

defendant to accept or retain the benefit without paying its value." Ramsey, 168 Wis. 2d at 785, 484 N.W.2d at 333 (1992).  The value of the benefit would remain the same, $160,000, because that is what a general manager's services were worth in the marketplace and defendant failed to prove that it received less value from Miller than what a manager is worth in the marketplace.

The next question is that of plaintiffs' entitlement to prejudgment interest on their damage award.


## B. Prejudgment Interest on Damage Award

The basic rule in Wisconsin is that prejudgment interest can be awarded only on amounts that are either liquidated prior to judicial determination or are readily ascertainable because there is a reasonably certain standard of measurement.  First Wisconsin Trust Co. v. L. Wiemann Co., 93 Wis. 2d 258, 276, 286 N.W.2d 360 (1980).  "The most frequently stated rationale for the rule is that if the amount of damages is either liquidated or determinable by reference to some objective standard, the defendant can avoid the accrual of interest by simply tendering to the plaintiff a sum equal to the amount of damages." Johnson v. Pearson Agri-Systems, Inc., 119 Wis. 2d 766, 771, 350 N.W.2d 127 (1984).

As with most legal rules, this one is easier to state than to apply.  In L. Wiemann Co., application was fairly simple:  prejudgment interest was allowed on the allowable damages,

7

which included the costs incurred by plaintiffs in repairing damage to the commercial property the defendant-tenant had abandoned, the real estate taxes that defendant had failed to pay as agreed and the loss of rent for the period between defendant's abandonment of the premises and plaintiffs' sale of the premises, all of which were determinable long before the suit was filed.  In a venerable case from 1899, Laycock v. Parker, 103 Wis. 161, 79 N.W. 327, the state supreme court awarded prejudgment interest to the plaintiff-contractor for the balance due on his contract and the cost of extra work beyond the contract's specifications. Although the costs of materials and labor were not known before the suit began, they "were capable of ascertainment by defendant . . . by reference to reasonably certain market values of the various items." Id. at 189, 79 N.W. at 336  The court added that "if one having a commodity to purchase or certain services to hire can by inquiry among those familiar with the subject learn approximately the current prices which he would have to pay therefor, a market value can well be said to exist, so that no serious inequity will result from the application of the foregoing rule to those who desire to act justly; especially in view of the other rule of law that a debtor can always stop interest by making and keeping good an unconditional tender, thus giving him a substantial advantage over a creditor, who has no such option." Id. at 186, 79 N. W. at 335.

The question of reasonable ascertainability took an interesting twist in Necedah Mfg. Corp. v. Juneau County, 206 Wis. 316, 237 N.W.277, 240 N.W. 405 (1932).  In that case,

the court allowed prejudgment interest in a negligence case on the ground that the value of the property in dispute had been valued by the tax assessor before it was destroyed by fire and the assessment provided a reasonable basis on which to determine damages before trial.

The state supreme court has held that in determining whether certain damages are readily ascertainable, lower courts can take into consideration any demands for damages that the plaintiff has made.  "[T]he test remains  whether the damage claim was liquidable or measurable or determinable in advance, but the variance between claim and court award can be used to determined whether the test was met." Dahl v. Housing Authority of City of Madison, 54 Wis. 2d 22, 32, 194 N.W.2d 618, 623 (1972) (citing  Congress Bar & Restaurant v. Transamerica Ins. Co., 42 Wis. 2d 56, 71, 165 N.W.2d 409, 416 (1969) (refusing to award prejudgment interest to plaintiff whose claim was substantially in excess of amount finally determined to be due).  Cf., Kleinschmidt v. Aluminum & Bronze Foundry, 274 Wis. 231, 79 N.W.2d 802 (1956) (finding claim readily ascertainable when demand for services and materials fell only $178.31 short of independent appraisal of same items to which parties had stipulated but concluding that stipulation barred award of prejudgment interest).

Plaintiffs argue that their damages were readily ascertainable because defendant could have calculated well before trial the reasonable value of Miller's compensation for the 11-month period he worked at defendant's dealership.  This would have been simple, plaintiffs

9

say, had defendant considered market data showing the compensation levels of general managers for dealerships similarly situated to defendant's.  Defendant denies that the question was as simple as plaintiffs characterize it and points out that plaintiffs' initial demand of defendant was for a percentage of profits in the amount of $32,627.94. Considering the difficulties in valuing professional services and the wide variance between plaintiffs' demand and the ultimate award at trial, I am persuaded that a Wisconsin court would not find plaintiffs' damages so easily ascertainable as to support an award of pre-judgment interest.  Therefore, I conclude that it was error to award such interest at the close of trial and I will vacate that part of the order and the entire judgment.

## B. Credit on Judgment

Defendant argues that the judgment amount should be reduced by $7,668.00 because the parties stipulated that defendant had paid plaintiffs this amount as an advance against what plaintiffs expected to receive as a management fee.  Plaintiffs stipulated that defendant was entitled to a credit in this amount against any amounts otherwise owed to plaintiffs.

Although plaintiffs argue that this credit was taken into account in the determination of the damage award, they are wrong.  It was never mentioned or considered.  Therefore, the stipulation governs and defendant is entitled to receive a credit of $7,668.00.

ORDER

IT IS ORDERED that

1. The judgment entered herein on December 17, 2007, is VACATED in full, as is that portion of the order awarding prejudgment interest to plaintiffs Lindquist Ford, Inc., Steven Lindquist, and Craig Miller;

2. Plaintiffs' motion for prejudgment interest of 5% from March 2004 is DENIED;

3. Plaintiffs' unopposed motion for interest pursuant to Wis. Stat. § 807.01(3) and (4) is GRANTED.

4. Defendant Middleton Motors, Inc. is entitled to a credit of $7,668.00 against the award to plaintiffs of $160,000.

The clerk of court is directed to enter an amended judgment in favor of plaintiffs for $152,332.00, plus interest in the amount of 12% from October 19, 2007 to the date on which judgment is paid by defendant, plus double costs.

Entered this 14th day of February, 2008.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

11

12